IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHNNY ALI LAROUSSI,　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　Petitioner,　　　　　　§
　　　　　　　　　　　　　　　　§
V.　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§　　　　No. 3:13-cv-1410-D-BN
　　　　　　　　　　　　　　　　§
WILLIAM STEPHENS, Director　　　§
Texas Department of Criminal Justice,　§
Correctional Institutions Division,　　§
　　　　　　　　　　　　　　　　§
　　　　　Respondent.　　　　　　§

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Johnny Ali Laroussi, a Texas prisoner, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below,

the application should be denied.

**Background**

Petitioner was charged with failing to stop and render aid in an accident

involving personal injury. He was found guilty at a bench trial, and his sentence,

enhanced by a prior conviction, was assessed at ten years' imprisonment. Petitioner's

conviction was affirmed on direct appeal. *See Laroussi v. State*, No. 05-10-01275-CR,

2011 WL 6275921 (Tex. App. – Dallas Dec. 16, 2011, pet. ref'd).

Petitioner did not file an application for state post-conviction relief. Instead, he

filed this action in federal district court.

The underlying facts of this case were set forth at length by the Dallas Court of Appeals on direct review and are summarized here from that opinion. *See Laroussi*, 2011 WL 6275921, at *1, *2.

David Garrett was riding his motorcycle home from work around 11:30 p.m. on May 26, 2006. He heard a noise, felt an impact, and realized he had been struck from behind. His motorcycle went down, and he hit the pavement, tumbling for "quite a ways." He was conscious the entire time and was aware that people came up to him, asking if he needed help. The paramedics came and took him to the hospital where he was diagnosed with nine broken vertebrae, fourteen broken ribs, and other related injuries. Garrett said that at no time did anyone come up to him admitting responsibility, giving his name, address, or proof of insurance, or showing his driver's license. Petitioner did not go up to Garrett at the scene and ask how he was or otherwise identify himself to Garrett.

The Dallas County Sheriff's Department investigated the accident and received information from an eyewitness about the license plate of the white pickup truck that hit Garrett. Deputy Edward Wilson located the pickup truck outside Petitioner's house. Detective Darrell Doty met Wilson at the house, and the two officers knocked on the door around four in the morning. Petitioner answered. He smelled of alcohol, had bloodshot eyes, and slurred his speech; Wilson saw a can of beer on the table. When asked, Petitioner indicated that he was not aware his truck might have been involved in an accident. The officers asked Petitioner to look at the truck with them, and Petitioner walked immediately to the front right bumper which was damaged. Doty

said Petitioner went straight to the area "like he knew where the damage already was." Petitioner then told officers that he needed to get his wife, who was sleeping.

Petitioner and his wife returned to their driveway where the officers were waiting. Petitioner said that he had been home since 2:30 in the afternoon and that some of his employees use his truck. He claimed one employee, Kimi Ceron, had been driving the truck the day before. Petitioner's wife stood behind Petitioner, shaking her head. She appeared aggravated with her husband. Petitioner asked if anyone was injured; when the officers told him the motorcyclist had been injured, Petitioner stood looking at the ground with his head hanging down. Petitioner gave the officers consent to search his truck; they took photographs of the damage and collected paint samples, including some purple paint, from the truck. Doty later collected purple paint samples from Garrett's motorcycle. John Witkowski, a forensic scientist with the Trace Evidence Section of the Texas Department of Public Safety, compared the purple paint taken from Petitioner's truck and the paint taken from Garrett's motorcycle bumper and stated the samples were similar in layer structure and color.

Alquimer Ceron, known as "Kimi," had worked as a painter for Petitioner for about fifteen years. He drove a 1994 Chevy van, but, when it broke down, he borrowed Petitioner's truck. According to Ceron, Petitioner had two trucks: a small white Chevy pickup and a larger white Dodge Ram pickup. Ceron drove the smaller Chevy truck sometime after his birthday in mid-July 2006. He did not drive the Dodge truck.

Petitioner's wife said that the Dodge truck was in the driveway when she left for work and that it was there when she returned home around 2:30 or 3:00 that

afternoon; that Petitioner was also home; that, although they drank some wine that evening, Petitioner was not drunk; and that she went to bed around 10:00 p.m. According to Mrs. Laroussi, Petitioner usually drove the Chevy truck, not the Dodge. She did not drive the Dodge truck nor did she know where the keys to the Dodge truck were on the night of the accident.

The above evidence shows that a white Dodge pickup truck owned by Petitioner hit Garrett near midnight on May 26, 2006. No one at the scene claimed responsibility. An eyewitness followed the truck and got the license plate information. The truck was located at Petitioner's house around 4:00 a.m. Although Petitioner appeared confused and intoxicated, he did walk directly to the front right bumper of the truck when the investigating officers asked him to look at the damage on the truck, as though "he knew where the damage already was." Petitioner appeared upset when officers told him the motorcyclist had been injured. Petitioner was the primary driver of the truck which had been at Petitioner's house all day and was there when police arrived about four hours after the accident.

Petitioner contends that (1) the evidence was insufficient to support the conviction and (2) he was denied effective assistance of counsel at trial as a result of counsel's (a) failure to examine medical records; (b) failure to object to denial of the right to confront a witness; (c) deficient handling of certain witnesses; and (d) failure to investigate and present evidence of a subsequent accident involving the same vehicle one month after the accident in this case.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal

or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

## Analysis

Petitioner contends that the evidence was insufficient to support the conviction. *See* Dkt. No. 3 at 11-14. He claims that there was no evidence to prove beyond a reasonable doubt that he was driving the white Dodge pickup truck at the time of the accident. *See id.*

To the extent, if any, that Petitioner asserts a claim of actual innocence, he cannot prevail. The United States Supreme Court has not recognized actual innocence as an independent ground for federal habeas corpus relief. *See McQuiggin v. Perkins,* 133 S.Ct. 1924, 1931 (2013) (citing *Herrera v. Collins,* 506 U.S. 390, 404-05 (1993)).

But it has recognized that legal insufficiency may be an avenue for federal habeas relief. *See Jackson v. Virginia,* 443 U.S. 307, 320-21 (1979). A federal court may not disturb a state criminal conviction on this ground unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See id.* at 319; *see also Gibson v. Collins,* 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *See Jackson,* 443 U.S. at 319; *Gibson,* 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990).

Petitioner cannot prevail on his claim of insufficient evidence. Here, the Dallas Court of Appeals reviewed the evidence presented at trial and concluded that "'the cumulative force of all the incriminating circumstances' [was] sufficient to support the

conviction." *Laroussi v. State*, No. 05-10-01275-CR, 2011 WL 6275921 *3 (Tex. App. –

Dallas, Dec. 16, 2011, pet. ref'd) (quoting *Hooper v. State*, 214 S.W. 3d 9, 13 (Tex. Crim.

App. 2007)).

Petitioner asserts that other people had access to the pickup truck and that

nobody knows who was driving the truck when the accident occurred. These assertions

do not show that the evidence was legally insufficient to support his conviction. *See*

*Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (explaining that "[e]vidence

as to the identity of the perpetrator of an offense can be proved by direct or

circumstantial evidence"); *see also United States v. Williams*, 264 F.3d 561, 576 (5th

Cir. 2001) (stating that review of the evidence is the same whether the evidence is

direct or circumstantial).

Petitioner takes issue with the evidence presented at trial and asserts that the

trial court must have considered hearsay testimony regarding the license plate number

of the hit and run vehicle involved even though the trial court stated throughout the

trial that it would not consider that evidence. According to Petitioner, "[n]o other

explanation will account for the trial court's assertion on the record, right before it

pronounced Laroussi guilty, that 'No doubt that your client was driving the vehicle

based on the strong circumstantial evidence that's been presented in this case.'" Dkt.

No. 18 at 20-21 (quoting RR 8, 74). Petitioner takes issue with whether a guilty verdict

could be based on the testimony that the paint sample from Petitioner's truck and from

Garrett's motorcycle could have come from the same source. *See id.* at 21.

Petitioner further asserts:

The trial court had to have considered Deputy Wilson's hearsay testimony that a witness had observed and recorded the license plate of the pickup truck which struck David Garrett's motorcycle immediately after the accident occurred. No other conclusion can explain the trial court's implied finding that the 1999 Dodge pickup registered to Laroussi was involved in the accident.

The same is true of the Dallas Court of Appeals' opinion issued in Laroussi's appeal, upon which Respondent bases his Response to Laroussi's 2254 motion. In the facts portion of this Response (at page 3), Respondent quotes that part of the Dallas Court of Appeals' opinion which states: "The Dallas County Sheriff's Department investigated the accident and received information from an eyewitness about the license plate of the white pickup truck that hit Garrett." Like the trial court, the Dallas Court of Appeals improperly based its legal sufficiency analysis on the hearsay testimony Deputy Wilson provided regarding the license plate number of the vehicle involved in the accident, even though the trial court, steadfastly represented to Laroussi's defense counsel throughout the trial that she would not consider this hearsay evidence. It is thus clear that the State courts' legal sufficiency analysis was based on an unreasonable determination of the facts relating to the license plate of the vehicle involved in the hit and run accident.

*Id.* at 22-23. And Petitioner contends that the other circumstantial evidence to which the trial court pointed for its judgment of conviction "was not reliable circumstantial evidence of Laroussi's guilt of the criminal offense of failure to stop render aid. Even if Laroussi did lie to these officers, there were several possible motives – apart from being guilty of the charged offense – which could logically explain his decision to lie or otherwise conceal evidence from these officers." *Id.* at 24.

But this all amounts to second-guessing or suggesting alternatives to the state court's factual findings – which this Court may not do on federal habeas review. Apart from any hearsay evidence of a license plate number identification that the trial court maintained it did not consider, there was evidence presented at the trial to support the elements of the crime of which Petitioner was convicted.

And, whatever Petitioner now asserts regarding the proper weight to be given to that evidence, the state court's factual findings were not objectively unreasonable, especially where the 28 U.S.C. § 2254(e)(1) rebuttable presumption that applies. The state court's findings are fairly supported by the record and are not unreasonable, whether or not the court could have reached a different conclusion in the first instance. *See Wood*, 558 U.S. at 301, 303. And Petitioner has not shown that the state court's rejection of his legal insufficiency claim resulted in a decision that was contrary to, or involved an unreasonable application of, the Supreme Court's *Jackson* decision or any other clearly established federal law. This ground for relief should be denied.

Next, Petitioner claims that counsel rendered ineffective assistance for (a) failing to examine medical records of the accident victim; (b) failing to object to denial of the right to confront a witness; (c) deficient handling of certain witnesses; and (d) failing to investigate and present evidence of a subsequent accident involving the same vehicle one month after the accident in this case. *See* Dkt. No. 3 at 15-19.

Respondent contends that Petitioner's grounds for relief (a), (b), and (c) above are unexhausted and procedurally barred because they were not presented to the Texas Court of Criminal Appeals for review. *See* Dkt. No. 12 at 5, 6. Where a "petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." *Id.* at 259 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)). The petitioner must "provide the state courts with a fair opportunity to apply

controlling legal principles to the facts." *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

Petitioner has not exhausted his state remedies for claims (a), (b), and (c) above. In his petition for discretionary review, Petitioner sought relief on the grounds of insufficient evidence and ineffective assistance of counsel for failing to properly investigate and present evidence of a subsequent accident involving the same vehicle while driven by a female. *See* Dkt No. 14-1. He did not seek relief on the remaining three ineffective assistance claims. *See id.*

The United States Supreme Court has suggested that a petitioner is entitled to file a "protective" petition in federal court and request stay and abeyance notwithstanding his failure to fully exhaust state remedies. *See Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005) (citing *Rhines v. Weber,* 544 U.S. 269, 278 (2005)). Such a stay is appropriate in limited circumstances, so that a petitioner may fully exhaust available remedies where there is "reasonable confusion about whether a state filing would be [considered] timely" so as to toll the limitations period of the Antiterrorism and Effective Death Penalty Act of 1996. *Id* at 416-17. Such a so-called *Rhines* stay is appropriate only if the petitioner shows (1) good cause for his failure to exhaust his claims, (2) his unexhausted claims are not plainly meritless, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *See Rhines,* 544 U.S. at 277-78. Petitioner has not shown good cause for his failure to exhaust state remedies, and he has failed to demonstrated that his unexhausted claims are not plainly meritless.

As such, Section 2254 precludes federal review over unexhausted claims for any purpose other than to deny their merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, the undersigned concludes that the Court should proceed with review of Petitioner's grounds for relief despite his failure to exhaust because they should be denied on the merits.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S. Ct. 1584 (2013).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S. Ct. at 791. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler,* 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Thus, "the question

is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington,* 131 S. Ct. at 791. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 792 (quoting *Strickland,* 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792.

Petitioner first claims that counsel was ineffective for failing to examine medical records of the accident victim. *See* Dkt. No 3 at 15-16. Petitioner states that, when the prosecutor sought to introduce the complainant's medical records into evidence, his attorney announced that he had not seen the records and that they were a complete surprise to him. *See id.* at 15. Petitioner argues that, when counsel made a hearsay objection to admission of the medical records, the court noted that counsel was objecting to information in materials that he had not reviewed. *See id.* at 16.

Despite the court's observation on counsel's hearsay objection, Petitioner is not entitled to relief. The medical records were not admitted as exhibits at trial and therefore could not have been reviewed as evidence. *See* Dkt No. 11-1 at 12. Petitioner does not describe how counsel's review of the medical records may have assisted his defense or in any way altered the result of the trial. Thus, Petitioner has failed to demonstrate prejudice resulting from counsel's alleged deficiency, and he is not entitled

to relief on this ground. *See Harrington,* 131 S. Ct. at 791, 792 (a showing of prejudice in an ineffective assistance claim requires a reasonable probability of a different outcome).

Petitioner claims that counsel was ineffective for failing to object to the denial of his right to confront a witness. *See* Dkt. No. 3 at 16. A witness to the accident followed Petitioner's truck and was able to get the vehicle's license plate number. *See id.* He provided the plate number to law enforcement officers which led them to Petitioner. *See id.* At trial, one of the officers, Deputy Wilson, began testifying about the eye witness and the license plate number. *See* Dkt. 11-1 at 29. Counsel made a hearsay objection to testimony regarding the eyewitness, who was not available to testify, but counsel did not make a Confrontation Clause objection. *See id.* Petitioner argues that counsel's failure to make a Confrontation Clause objection resulted in a waiver of the constitutional error. *See* Dkt. No. 3 at 16.

The record reflects that, pursuant to counsel's hearsay objection, which the trial court sustained, the court limited the testimony about the eyewitness to background information only to show why police initiated the investigation of Petitioner. *See* Dkt. No. 11-1 at 29-30. The court explicitly recognized Petitioner's right to confrontation and stated that no testimony of what the eye-witness saw could be offered other than the fact that the investigation was initiated based upon eyewitness information. *See id.* at 30.

"Under the Sixth Amendment, a criminal defendant has the right 'to be confronted with the witnesses against him.'" *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir.

2008) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988)). "The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 54-56 (2004)). But a person is generally not considered a witness "against" a defendant for purposes of the Confrontation Clause unless the person's "testimony is part of the body of evidence that a [fact finder] may consider in assessing his guilt." *Cruz v. New York*, 481 U.S. 186, 190 (1987); *accord United States v. Stalnaker*, 571 F.3d 428, 434 (5th Cir. 2009).

As a result of the trial court's ruling on counsel's hearsay objection, statements from the uncalled eyewitness were not admitted at Petitioner's trial and thus did not become part of the "body of evidence" that the court considered in assessing Petitioner's guilt. Therefore, statements made by the uncalled witness could not serve as the basis for a Confrontation Clause violation. Counsel may not be deemed ineffective for failing to make a meritless confrontation objection. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). Petitioner is not entitled to relief on this ground.

Petitioner asserts that counsel was ineffective in his handling of certain witnesses. *See* Dkt. No. 3 at 18. While this ground for relief is somewhat vague, Petitioner appears to claim that counsel was ineffective for failing to call Gary Wayne Sullivan as a witness at trial. *See id.* Petitioner states that Sullivan, a former employee, would have testified that he used Petitioner's truck when needed and that a key was hidden for him under a sprinkler head. *See id.* Petitioner argues that this

-17-

testimony "would have gone a long way toward destroying any connection the state had seeking to link Mr. Laroussi to the accident in question." *See id.*

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

Sullivan testified at the hearing on Petitioner's motion for new trial. He testified that he had worked for Petitioner, that he occasionally used Petitioner's truck, and that he had seen two or three other people use the truck. *See* Dkt. No. 11-3 at 23-25. Sullivan stated that he used the truck in March 2006 and that a key to the truck was left for him in a sprinkler system box. *Id.* at 23, 24. Sullivan further testified that, on the day of the accident at issue, he was in New Orleans. *See* Dkt. No. 11-3 at 23.

While Sullivan's hearing testimony supports Petitioner's claim of what Sullivan would have said had he been called to testify at trial, Sullivan's testimony was irrelevant to the question of who was driving the truck on the night of the accident. Sullivan was in New Orleans on the night in question, and there was no testimony that he had any knowledge of exculpatory evidence. Moreover, Sullivan's testimony would have been cumulative. Petitioner's wife, Anita Laroussi, testified that other people

drove the truck and that keys were sometimes left on the floorboard of the truck. *See* Dkt. No. 11-2 at 6, 7. This testimony was uncontroverted, and Petitioner's "someone else driving defense" was squarely before the trial court. Petitioner has failed to demonstrate that, had counsel called Sullivan to testify at trial, there is a reasonable probability that the result of the trial. Petitioner has failed to meet his burden to prove ineffective assistance of counsel on this ground.

Petitioner claims that counsel was ineffective for failing to investigate and present evidence of a subsequent hit-and-run accident involving the same vehicle when it was driven by a female. *See* Dkt. No. 3 at 15-19. He argues that this evidence would have further supported his "someone else driving defense." *Id.* at 19.

This ground for relief was presented on direct appeal. The Dallas Court of Appeals found that Petitioner and his attorney had discussed whether to introduce evidence of the subsequent accident at trial and had agreed that the best strategy was not to introduce the evidence. *See Laroussi v. State*, No. 05-10-01275-CR, 2011 WL 6275921 *5 (Tex. App. – Dallas, Dec. 16, 2011, pet. ref'd). Counsel reasoned that, when he represented Petitioner in a previous case, he had used the "someone else driving defense" and won. *See id.* In light of the fact that he had raised the same defense at Petitioner's trial in the instant case, counsel felt that presenting evidence of a third accident involving "someone else driving" Petitioner's truck was not a good strategy. *See id.* On review of this ground, the Dallas Court of Appeals denied relief. *See id.*

A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence

or that, under the circumstances, the challenged action might be considered sound trial strategy. *See Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Where, as here, the state court adjudicated an ineffective assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). *See Harrington,* 131 S. Ct. at 785, 788. In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.

"The *Strickland* standard is a general one, so the range of reasonable applications is substantial," and, where, as here, Section 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. Thus, if the most that a petitioner can demonstrate is that fairminded jurists could disagree on the correctness of the state court's decision as to either deficient performance or prejudice, federal habeas relief is precluded. *See Clark*, 673 F.3d at 422, 424.

Here, Petitioner failed to demonstrate that counsel's strategy – with which Petitioner originally agreed – was objectively unreasonable or that he suffered prejudice as a result. Petitioner has failed to show that the state court's decision on this claim was unreasonable, and he is not entitled to relief.

On review of the papers, pleadings and records in this case, the Court finds that Petitioner has failed to establish that the state court's adjudication of his grounds for

habeas relief resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner has further failed to demonstrate that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). And Petitioner has failed to demonstrate that he is entitled to habeas relief on his three unexhausted ineffective assistance of counsel claims.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: July 8, 2014

                                         _____

                                         DAVID L. HORAN
                                         UNITED STATES MAGISTRATE JUDGE